IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MYRON JAMES, # 144470,                           :

      Plaintiff,                           :          CIVIL ACTION

vs.                                              09-00020-WS-C :

PHYCHO UNSHAW,                                   :

    Defendant.

:

<u>REPORT AND RECOMMENDATION</u>

This 42 U.S.C. § 1983 action filed by an Alabama prison inmate proceeding *pro se,* together with a motion to proceed without prepayment of fees*,* was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  For the reasons set forth below, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

On January 12, 2009, Plaintiff filed this 42 U.S.C. § 1983 Complaint against Defendants Phycho Unshaw, Deputy Warden Folks, Nurse Harelson, and Phycho Robert Hunter, together with a motion to proceed without prepayment of fees.  (Docs. 1, 2).

Title 28 U.S.C. § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* in civil actions under certain circumstances.  It provides:

> In no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under this section [28
> U.S.C. § 1915] if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility,

> brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Under § 1915(g), "if a prisoner has had three or more cases or appeals dismissed for one of the recited reasons, he cannot proceed *in forma pauperis*." Doss v. Henry, 2008 WL 5231863, *1 (N.D. Fla. 2008). "A prisoner who is no longer entitled to proceed *in forma pauperis* must pay the filing fee at the time he initiates the suit, and his failure to do so warrants dismissal without prejudice." Id. (citing Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001)). "The only exception to this is if the prisoner alleges he is 'under imminent danger of serious physical injury.'" Id. (citing 28 U.S.C. § 1915; Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004); Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998)).

During the screening of this action under 28 U.S.C. § 1915(e)(2)(B), the Court discovered that, after reviewing the records of the United States District Court for the Southern, Middle, and Northern Districts of Alabama, Plaintiff previously had more than three actions that were dismissed as frivolous. Those actions are as follows: James v. Lampkin, et al., CA 96-01967-ELN-TMP (N.D. Ala. 1996); James v. Donaldson Correctional Facility, CA 96-01111-SCP-PWG (N.D. Ala. 1996); James v. Hightower, et al., CA 95-01625-JHH-PWG (N.D. Ala. 1995); James v. Harrelson, et al., CA 92-00607 ID-CSC (M.D. Ala. 1992); and James v. Hunt, et al., CA 91-0784-BH-S (S.D. Ala. 1993)

2

(three actions consolidated into one).

Furthermore, the present Complaint (Doc. 1) does not indicate that at the time of filing Plaintiff was "under imminent danger of serious physical injury." Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time). Plaintiff, an inmate at Holman Correctional Facility ("Holman"), has filed this action asserting a claim for inadequate medical treatment relating to the administration to him of a certain medication known as Prolixin,[1] during a time period ranging apparently from January 2004, through the time of the filing of the Complaint on January 12, 2009. (Doc. 1). Plaintiff's lawsuit was officially filed on January 12, 2009, with the envelope containing the document being postmarked January 8, 2009. (Doc. 1 at 7). Additionally, along with his Complaint, Plaintiff submitted an application to proceed in forma pauperis in this action, and this application was signed by jail personnel and dated January 6, 2009. (Doc. 2 at 4). Plaintiff's allegations, however, fail to indicate that he was under imminent danger of serious physical injury at or even near the time of his filing.

In his Complaint, Plaintiff claims that Defendants "shot [him] up with Prolism (sic) shots and [he] did not need them." (Doc. 1 at 5). Plaintiff claims that the shots are making him crazy and that Defendants are giving him nothing for the side effects. (Id.). Plaintiff also complains that he has been held in disciplinary segregation beyond his

---

[1]

Prolixin Decanoate "is a highly potent behavior modifier with a markedly extended duration of effect." Physicians' Desk Reference, at 509 (1996).

prescribed time.  (Id.).  Plaintiff is seeking an award of two million dollars, as well as for

Defendants to be excused from their positions with the Department of Corrections.  (Id. at

6).

Because of the serious nature of Plaintiff's allegations, this Court has obtained and

reviewed Plaintiff's medical records from Holman Correctional Facility for the time

period surrounding the filing of Plaintiff's Complaint.  (Doc. 3, Medical Records).

Following a thorough review of those records, the Court is further satisfied that Plaintiff

was not under imminent danger of serious physical injury at or near the time of his filing

this lawsuit.

Plaintiff's medical records reflect that on November 18, 2008, Plaintiff had to be

"talked into" taking his injection, and the progress note reflects that Plaintiff had an

appointment scheduled with Dr. Earnshaw[2] for November 20, 2008.  (Doc. 3 at 10).  On

December 17, 2008, Plaintiff was irritable and argumentative when approached by

medical staff to administer the injection, stating that he did not want a shot and had no

orders for involuntary medications.  (Id.).  An officer, Captain Craft, was present along

with the nurse, and explained with the nurse that Plaintiff did have to take the involuntary

medication, at which point Plaintiff complied.  (Id.).  It was noted "Prolixin Dec. 25 mg

IM given R gluteal - pt tolerated well" and that there were no further complaints or

distress from Plaintiff.  (Id.).  The progress note further states to continue to give the

_____

[2]

The Court assumes that Plaintiff is referencing Dr. Earnshaw when he names as a
defendant "Phyco Unshaw" in this action.

injections and remind Plaintiff of the involuntary orders when he tries to refuse.  (Id.).

A treatment plan review, on December 17, 2008, indicated that Plaintiff was still impulsive, but was more receptive to discuss the situation without making demands. (Doc. 3 at 11).  It also stated that Plaintiff was taking the medication and was receptive to counseling.  (Id.).  It was further noted in this review that "[i]nvoluntary meds stabilize behavior & insure compliance."  (Id.).  It was also noted that "[h]e's receptive to taking meds at scheduled times."  (Id.).

On January 16, 2009, Plaintiff again received an injection, and was observed as having a flat affect but communicating well.  (Doc. 3 at 10).  Plaintiff was described as quiet and submissive on this day.  He did indicate that he wanted something for the side effects of  the injection, but it was noted that "no defined behavior pattern warrants such." (Id.).

During this time period, Plaintiff also complained of a loss of strength to his left hand, which Plaintiff attributed to an injury he sustained during a recent basketball game. (Doc. 3 at 4-6).  For this complaint made by Plaintiff to Health Services at Holman on December 9, 2008, Plaintiff was examined, administered Motrin, and afforded an x-ray, which was normal.  (Doc. 3 at 4-8).

On December 18, 2008, a "Review of Segregation Inmates" was conducted by the Mental Health Services at Holman, and it was noted that Plaintiff had been placed in segregation on November 9, 2008.  (Doc. 3 at 9).  The comments contained in this report

5

state: "2011 EOS - mental health patient.  No weapon in fight...agitated about taking

shots.  Hesitates about taking.  Forced to take medications."  (Id.).  Plaintiff's mental

status examination revealed that he had a flat affect, that his appearance was

disorganized, and that he was distracted.  (Id.).  It was observed that Plaintiff's mood was

depressed but that he was oriented to time, place and person.  (Id.).  It was also noted that

Plaintiff had good long and short term memory, intellectual functioning was borderline,

and speech and thoughts were normal and tangential.  (Id.).  Plaintiff was observed to be

agitated, but rational.  (Id.).  The recommendation of the review was that placement in

segregation was not impacting Plaintiff's mental health.  (Id.).

      In evaluating whether a prisoner's allegations fall within the exception to the

application of 28 U.S.C. § 1915(g), the Eleventh Circuit has directed that "the issue is

whether...[the] complaint, as a whole, alleges imminent danger of serious physical

injury."  Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004).  In Skillern v. Paul, 202

Fed. Appx. 343, 344 (11th Cir. 2006), the Court rejected an inmate's request that it

"'presume imminent danger' whenever a prisoner complains of a medical issue."  In

affirming the district court's dismissal of the prisoner's complaint pursuant to 28 U.S.C. §

1915(g), the Eleventh Circuit noted that the prisoner had alleged that the deprivation of

his heart medication might result in serious injury, but that he, in his vague statements,

had failed to allege any description of the medical condition requiring the medication or

that he had even suffered any actual physical injury as a result of not receiving the

medication.  Id.; cf. Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding that

6

prisoner with HIV and hepatitis had alleged imminent danger of serious physical injury

when prisoner brought claim that his medical treatment had been abruptly stopped and

that as a result he "suffered prolonged skin and newly developed scalp infections, severe

pain in the eyes and vision problems, fatigue and prolonged stomach pains" and that he

would die earlier if not treated).

     A review of Plaintiff's Complaint reflects that Plaintiff was not "under imminent

danger of serious physical injury" at the time of filing this action.  Plaintiff was receiving

medical treatment, and although he claims that he suffered side effects from medication,

Plaintiff fails to advise the Court as to what those side effects allegedly were.  A

statement by Plaintiff that the shots are making him "crazy" is not sufficient to show

imminent danger of serious physical injury.  Moreover, a complete review of Plaintiff's

medical records from Holman also indicates that Plaintiff, at the time he filed this action

in early January, was not "under imminent danger of serious physical injury."  In those

records it is noted by medical staff that on one occasion Plaintiff requested a drug for side

effects, but the nurse noted that "no defined behavior pattern warrants such."   (Doc. 3 at

10).

     "The fact that Plaintiff may disagree with the medical treatment that he was

receiving fails to show even a constitutional violation, much less that he was actually in

danger of serious physical injury.  See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir.

1995) ("the question of whether governmental actors should have employed additional

diagnostic techniques or forms of treatment 'is a classic example of a matter for medical

judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)); Trotter v. Correctional Medical Services, Inc., 2008 WL 2225696 at *9 (S.D. Ala. 2008) ("It is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.") (citations omitted).

"In this Circuit, a prisoner who is no longer entitled to proceed *in forma pauperis* must pay the filing fee at the time he initiates the suit, and failure to do so warrants dismissal without prejudice." Doss, 2008 WL 5231863, *2 (N.D. Fla. 2008); Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) ("the proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the three strikes provision of § 1915(g)."). Because Plaintiff did not pay the $350.00 filing fee at the time that he filed this action and because he does not meet the "under imminent danger of serious physical injury" exception to § 1915(g), Plaintiff's action is due to be dismissed without prejudice.

Accordingly, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 20th day of July, 2009.

       s/WILLIAM E. CASSADY           
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the <u>objection.  The</u> objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.